THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-478-FL

|  |  |  |
|---|---|---|
| PERRY PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| I AM PENSION FUND, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion for summary judgment, made pursuant to Federal Rule of Civil Procedure 56. (DE 23). The issues raised have been briefed fully, and in this posture are ripe for ruling. For the reasons stated more specifically herein, defendant's motion is granted.

## STATEMENT OF THE CASE

Plaintiff, appearing *pro se*, filed this action *in forma pauperis* on August 25, 2014, alleging nonpayment of his early retirement pension under § 502(a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(3). In support of his claim, plaintiff asserts that he was due benefits under the IAM Pension Plan ("Plan"), which governs the administration of defendant IAM Pension FUND ("Fund"), because he had been employed by a contributing employer for a number of years, well in excess of the minimum hour requirement for receipt of the Plan benefits. (DE 4, 5). Plaintiff seeks past due benefits and court costs. (DE 2).

On June 15, 2015, defendant moved for summary judgment, arguing that of the time plaintiff may have spent employed with a contributing employer, only 274 hours were in "covered

employment". On July 1, 2015, plaintiff filed a response to the motion, correcting said response on July 6, 2015.

In support of its motion, defendant relies upon the following materials: a declaration by the Fund pension supervisor (DE 24-1); the Plan (DE 24-3); a Trust Agreement related to the Plan (DE 24-2); plaintiff's application and subsequent communications (DE 24-4, 6, 7, 8, 9, 10, 12); Fund documentation of plaintiff's eligibility (DE 24-5); declaration of the director of The Fund (DE 24-11); and minutes to a meeting of the Fund board of trustees (DE 24-13).

In his response, plaintiff relies upon the following materials: a summary of the Plan (DE 5-1); plaintiff's social security records (DE 5-5); documentation regarding plaintiff's physical disability (DE 5-6); affidavits regarding plaintiff's injury (DE 19-2); documentation of plaintiff's application (DE 26-4; DE 5-2, 3, 4, 8); and a fund estimate report (DE 25-2).

## STATEMENT OF FACTS

The facts viewed in the light most favorable to plaintiff may be summarized as follows:

Defendant is an entity that provides pension benefits to certain employees covered by collective bargaining agreements between employers and local unions affiliated with the International Association of Machinists and Aerospace Workers ("IAM Union"), and falls under the Employee Retirement Income Security Act ("ERISA"). (Plan, DE 24-3). The Fund is administered by a Board of Trustees ("Trustees"), and administration by the Trustees is governed by the Plan. (DE 24-3). Employees who qualify for pension benefits are referred to as "plan participants." (DE 24-1). Trustees have exclusive discretionary authority to determine benefit eligibility and to construe the terms of the Plan:

> The Trustees have the sole and absolute authority to interpret this Plan and to determine eligibility for benefits under this Plan. As part of their discretionary

2

powers, the Trustees shall be the sole judge of: 2 (a) the standard of proof required in any case; (b) the application and interpretation of this Plan; (c) the amount of or entitlement to a pension; and (d) the crediting of Future or Past Service. The decisions of the Trustees with respect to any exercise of this discretion made in good faith shall be final and binding on all parties.

(<u>Id.</u>, § 8.3).

In order to receive benefits from the Fund under the Plan, an individual must become a "plan participant." (<u>Id.</u> § 1.12). A "Covered Employee who is first employed in Covered Employment shall become a participant" following any Plan Year in which he completed at least 1000 hours of service. (<u>Id.</u> § 2.8). The amount of hours of service and period of time over which they are accrued can determine the benefits for which the employee is qualified. (<u>Id.</u>). At the time of plaintiff's application, 1000 "Hours of Service" were necessary to qualify for a disability pension. (<u>Id.</u> §§ 4.4, 4.8). "Hours of Service" are defined as hours of work in "Covered Employment" for a "Contributing Employer." (<u>Id.</u>, § 1.2). The terms "Hours of Service," "Contributing Employer," and "Covered Employment" are defined in the IAM Pension Plan. (<u>Id.</u>).

A "Contributing Employer" is an employer who has been accepted for participation in the Fund by the Trustees, which requires that the employer have a collective bargaining agreement with either the Fund, IAM union, or an IAM union lodge ("CBA"), mandating contributions to the Fund. (<u>Id.</u>, § 1.3). However, a "Contributing Employer" can be such for a limited purpose, as "[a]n employer shall be considered a Contributing Employer only with respect to those job classifications and places of business which are covered" by the first CBA or amendments or modifications to that CBA. (<u>Id.</u>). This controls the term "Covered Employment" in that some work for a Contributing Employer" may be outside a job classification covered by the CBA, and therefore not "Covered Employment."

3

There are two relevant ways in which an employee may work in "Covered Employment." First, if the employee is represented for the purpose of collected bargaining by a lodge chartered by IAM Union, their employer is accepted in writing as a "Contributing Employer," and the employer has agreed in writing to make contributions on their behalf, then the employee's work may be "Covered Employment." (Id. § 1.22); (Trust Agreement, DE 24-2 at 3). Second, employees not under a collective bargaining agreement may be considered to be working in "Covered Employment" if working in a job classification and location such that payments were made on their behalf to the Fund by a "Contributing Employer" subject to a CBA. (Plan § 2.7, DE 24-3; Trust Agreement, DE 24-2 at 4).

In applying for benefits under the Plan, the burden is on the applicant to furnish the necessary information for applicant's claim. (Plan § 8.2, DE 24-3) ("Every claimant for benefits shall furnish the Board of Trustees all information and proof relevant to his eligibility for benefits under this Plan.").

Plaintiff submitted an application for a pension on April 4, 2013.[1] (Pension Application, DE 24-4). On his application, plaintiff wrote that he was employed with Electric Service Ltd. from September 1992 to August 1996, with Atlantic Project from August 1996 to April 1998, when "Atlantic Project changed to Unicco," and with Unicco from April 1998 to February 2001. (Id. at 6). In response to plaintiff's application, defendant informed plaintiff that he did not have enough hours of "Covered Employment" to be a participant in the Plan. In particular, defendant determined

---

[1] Plaintiff's pension application is documented as an application for a "disability pension." (DE 24-4 at 4). However, rejection of plaintiff's pension application was treated as one for an early retirement pension, rather than a disability pension. (DE 24-10 at 21, 43). Nevertheless, the same threshold analysis of hours of service to determine whether plaintiff ever became a participant in the plan applies in either instance. (Plan §§ 4.4, 4.8, DE 24-3). In either instance, plaintiff needed fewer hours of service than he thought he had, and more hours of service than defendant determined to be the case.

4

that of these employers, only Unicco was a contributing employer to the Plan, and Unicco had only made contributions on behalf of plaintiff for 274 hours. (Letter May 3, 2013, DE 24-6). Defendant's determination was made on the basis of "remittance reports" submitted by plaintiff's employer that listed the hours for which plaintiff's employer had remitted contributions to the fund on behalf of plaintiff. (DE 24-5). As plaintiff only appeared to have 274 hours of service, defendant informed plaintiff that he was not qualified for Plan benefits, informed him of his right to appeal, and made an inquiry for additional information. (Id.); (Questionnaire May 7, 2013, DE 25-7). In reply, plaintiff sent defendant a letter stating that he had enough hours, and attached social security records to show that he had worked for Unicco in 1998, 1999, and 2000, and been paid for work done on those years. (Id.).

Defendant denied plaintiff's appeal because "[he was] not credited with at least 1000 hours of service" and therefore "did not commence Participation in the Plan." (Letter June 17, 2013, 24-8). Plaintiff was told further that to qualify for an "Early Retirement Pension" he would have to "return to Covered Employment and accrue 5 years of Credited Service including 1200 hours of service" to reapply for benefits. (Id.). On October 14, 2013, plaintiff requested a review by the board of trustees and again attached his social security records. (DE 24-9). Defendant treated this as an appeal, and again denied plaintiff's application on December 23, 2013. (DE 24-10 at 41-43) ("When he left "covered employment" in 2000 Mr. Parker had not accrued at least 1000 Hours of Service. Therefore, he did not Commence Participation in the Plan").

## COURT'S DISCUSSION

A.     Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter

of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-490.

"A denial of benefits challenged under § 1132(a)(1)(B) of ERISA is reviewed under a de novo standard unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility of benefits or to construe the plan's terms." Firestone Tire and Rubber Co. v. Bruch 489 U.S. 101, 102 (1989). When "a plan by its terms confers discretion on a fiduciary, and the fiduciary acts within the scope of the conferred discretion" the court defers to the fiduciary, and the "discretionary decision will not be disturbed if reasonable, even if the court would have reached a different conclusion." Booth v. Wal-mart Stores, Inc. 201 F.3d 335, 341 (4th Cir. 2000). This abuse of discretion review is guided by the eight Booth factors:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Id. at 342-343.

As the third Booth factor makes clear, "the assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time." Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120 (4th Cir. 1994). Therefore, while considering new evidence may be appropriate under de novo review, it is not appropriate under the abuse of

discretion standard. (Id.). Moreover, as the Plan puts the onus on the applicant to provide the information that forms the basis of his claim, "[the] plan administrator is under no duty to secure specific forms of evidence." Elliott v. Sara Lee Corp., 190 F.3d 601 (4th Cir. 2001). (Plan § 8.2, DE 24-3).

In the instant case, the language of the plan expressly grants discretionary authority to determine benefits, so the abuse of discretion standard applies, and the court will restrict its analysis to whether defendant's determination was reasonable.

B.    Analysis

Under the Plan, in order to be come eligible for either an early retirement pension or a disability pension, an applicant must have become a participant in the plan by completing a minimum number of "Hours of Service" in "Covered Employment." (Plan §§ 1.12, 2.8, DE 24-3).

"Hours of Service" are defined as "all regular time hours in "Covered Employment" for which a "Covered Employee" is paid or entitled to payment for the performance of duties for a "Contributing Employer" or "all other hours in 'Covered Employment' for which contributions are payable to the Trustees in accordance with the Collective Bargaining Agreement, the Participation Agreement, or by applicable law." (Id. § 1.20). Defendant interprets this as "all regular time hours for which an individual working in 'Covered Employment' is paid or entitled to payment for the performance of such work for a 'Contributing Employer.'" (Declaration, DE 24-1). The court finds that this interpretation of "Hours of Service" is reasonable in light of the plain language of the Plan.

Accordingly, the controlling issue in this action is whether, given this interpretation, defendant was reasonable in concluding that plaintiff did not have the 1000 "Hours of Service." Plaintiff's social security records show that plaintiff was being paid by Unicco, a "Contributing

8

Employer," in 1998, 1999, and 2000, and had total earnings over $70,000. (See DE 27-1). Thus, where plaintiff now claims his wage was $13.50 an hour, he may have worked 5000 hours or more for Unicco. (See id.).

However, in order for plaintiff to qualify, he must have not only worked for a "Contributing Employer" for the necessary number of hours, but also worked a necessary number of hours in "Covered Employment." The administrative record at the time the decision was made only shows 274 hours in "Covered Employment."

Defendant had three sources of information in processing plaintiff's application: (1) Plaintiff's social security records; (2) Plaintiff's application; and (3) Data from remittance reports. (DE 24-10); (DE 24-5). Plaintiff's application states that he began working for a Contributing Employer in April 1998. (DE 24-4). Plaintiff's social security records show that he was paid by that Contributing Employer in 1998, 1999, and 2000. (DE 27-1). The remittance reports, by contrast, show a limited number of hours in "Covered Employment." (See DE 24-5).

In particular, the remittance reports suggest that plaintiff earned 40 hours in "Covered Employment" in April 1998, in May 1998, and received no hours in "Covered Employment" as a "non union" employee for June 1998 and July 1998. (Id. at 3-6). The remittance reports are then silent until March 2000, when plaintiff earned 40 hours in "Covered Employment." (Id. at 7-13). Plaintiff earned another 34 hours in "Covered Employment" in April 2000, and is thereafter listed as having no hours and "on leave" for May, June, July, August, September, and October 2000. (Id.).

While plaintiff has presented evidence that he was employed for more than 274 hours, he did not provide any evidence to defendant that those hours were in "Covered Employment." Plaintiff also asserts "[defendant] omitted the Plaintiff's employment record of 1999 and only partially listed

his 2000 work history." (DE 27). However, plaintiff has not asserted or provided evidence that these months were in "Covered Employment," and the remittance summary on which defendant relied in the appeal determination does not contain a month-by-month analysis. (DE 24-1; DE 24-10 at 39-40). Moreover, the May 1998 and June 1998 reports list plaintiff as "non-union." (DE 24-5 at 5, 6). This suggests that plaintiff was not "an employee represented by a union lodge for the purpose of a collective bargaining agreement," but instead was only in "Covered Employment" when "working in a job classification and location such that payments were made on his behalf to the Fund." (Plan §§ 1.3, 1.22, 2.7, DE 24-3). The remittance reports accordingly suggest that Unicco made payments on plaintiff's behalf for only 274 hours, and he was therefore credited by defendant with 274 hours of service.

In sum, it was not unreasonable for defendant to reach the determination, on the basis of the information before them, that plaintiff had not become a participating member, and did not qualify for either disability or early retirement benefits from the fund. Because defendant's decision to deny benefits to plaintiff was not unreasonable, defendant's motion for summary judgment must be granted.

## CONCLUSION

Based on the foregoing, the court GRANTS defendant's motion for summary judgment. The clerk is DIRECTED to close this case.

SO ORDERED, this the 2nd day of November, 2015.

LOUISE W. FLANAGAN
United States District Judge

10